OPINION
{¶ 1} Defendant-appellant, Bernard R. Simon, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of one count of rape in violation of R.C. 2907.02, a felony of the first degree, and one count of kidnapping in violation of R.C. 2905.01, a felony of the first degree. Because venue was proper in Franklin County, and the sufficiency and manifest weight of the evidence support defendant's convictions, we affirm.
 {¶ 2} According to the state's evidence, on the evening of September 25, 2003, the 16-year-old victim and her friend, Yvonne, went to a party at the house of their friend Kevin. The victim, Yvonne, and Kevin all lived within one block of Perdue Avenue in Franklin County, Ohio. The victim and Yvonne were playing cards when defendant, then 27 years old, arrived, socialized with the crowd, and left. Although the victim danced with Kevin once defendant left, she immediately sat down to avoid dancing with defendant when she saw defendant re-enter the house. As she explained, she knew defendant liked her, and she did not want to encourage his feelings.
 {¶ 3} About two hours later, somebody came to the party and told Yvonne that a rock was thrown through a window at her house. Yvonne left, but the victim remained at Kevin's party. Defendant, who again had left the party, returned to Kevin's house and advised the victim that Yvonne wanted her to come to Yvonne's house. Defendant insisted that he drive the victim because of the late hour. Remembering her promise to stay with Yvonne for the entire night, the victim accepted defendant's offer but specifically told defendant, "no hanky-panky." (Tr. Vol. II, 21.)
 {¶ 4} Defendant drove straight toward Yvonne's house but turned in the opposite direction when he came to Yvonne's street. The victim asked defendant where he was going, and he responded that he needed to get some tape for Yvonne's window. Defendant stopped at a gas station before he headed south on I-71. The victim again asked defendant where they were going; defendant told her that he owned a trucking business not very far away, and the tape was inside one of the trucks.
 {¶ 5} When defendant drove past the Greenlawn Avenue exit of I-71, the victim realized they were much farther south. She again asked defendant where they were headed, and defendant replied that they were getting close. Knowing that defendant was drinking, the victim accepted his answer in an effort not to upset him or cause a problem. The victim soon became suspicious of defendant's "tape" story and kept track of the road signage. After about 15 more minutes, the victim again asked defendant if they were getting close because the signs indicated that they were leaving Columbus.
 {¶ 6} Defendant drove for 20 more minutes before he pulled off to the side of the interstate and parked. Defendant exited his Bronco, urinated on the ground, approached the passenger side of the car and told the victim to get out. The victim refused because the night was cold, but when defendant became aggressive, she got out of the car. Defendant reentered the car and acted as if he were going to drive off without her. The victim became scared, started crying, and pleaded for defendant to take her home. Defendant stopped the car, opened the back door, and told the victim that he just wanted to talk. Defendant folded down the back seats of the car and told the victim to get in the car or he was going to leave her. The victim got in, and defendant followed.
 {¶ 7} While sitting on the back seat floor, the victim kept telling defendant that she wanted to go home. Defendant scooted closer to the victim, grabbed her legs and tried to pry them apart. The victim told defendant "no," "stop," and "I don't want to." (Tr. Vol. II, 33.) Defendant became more aggressive, grabbed the victim's throat, and began choking her. The victim cried and repeatedly told defendant "no" as he tried to pry her legs apart. Defendant told the victim that he had a gun underneath the driver's seat and he was going to have to use it. The victim, scared for her life, ended her struggle and asked defendant to at least wear a condom.
 {¶ 8} Defendant took off his shirt, pulled down his pants, and then forcefully pulled down the victim's cheerleading shorts she was wearing under her dress. Defendant vaginally raped the victim while she screamed and tried to resist. Defendant did not wear a condom and kept one hand on the victim's throat during intercourse. The victim refused defendant's instructions that she get on top of him, but when he again threatened to retrieve the gun, she complied.
 {¶ 9} When defendant finished, he threatened to kill the victim to prevent her from telling anyone. The victim assuaged defendant by telling him that she would stay with him at his father's house that night. The victim then persuaded defendant to let her drive back to the party so she could tell Kevin where she was staying for the night.
 {¶ 10} When the two arrived at Kevin's house, the victim went inside while defendant stayed in the car. The victim was crying, but she did not tell Kevin what happened. Kevin realized something was wrong, so he called over his next-door neighbor, Laquishelia, who was the best friend of the victim's sister. The victim did not tell Laquishelia what happened; nor did she immediately talk because she was afraid defendant would kill her if she told anyone about the incident. Laquishelia suspected what happened, so when she and the victim reached Laquishelia's house, Laquishelia called 9-1-1. Defendant drove away while the victim was in Kevin's house.
 {¶ 11} The police arrived and took the victim to Children's Hospital. Dr. Daniel Cohen conducted a sexual assault examination of the victim and observed a fresh laceration in her vagina and a bruise on her cervix. Dr. Cohen testified that the injuries were consistent with forceful penile to vaginal penetration.
 {¶ 12} Detective Al Judy collected the rape kit from Children's Hospital and forwarded it to the Bureau of Criminal Investigation's ("BCI") laboratory where a forensic scientist conducted a DNA analysis. BCI forwarded the samples and findings to the Bode Technology Group for further DNA analysis and to compare the DNA collected from the rape kit to DNA samples contained in CODIS, a national DNA database. An Alabama DNA databank CODIS administrator determined the DNA collected from the rape kit was consistent with defendant's DNA profile.
 {¶ 13} Detective Judy received confirmation of the DNA match, issued an arrest warrant for defendant, and forwarded it to the Sheriff in Wilcox County, Alabama. The Alabama police arrested defendant, defendant waived extradition, and defendant was transported to Franklin County, Ohio for trial.
 {¶ 14} On January 25, 2005, defendant was indicted and charged with one count of rape and one count of kidnapping. After a five-day trial, the jury delivered its verdicts finding defendant guilty on both counts. The court imposed a six-year sentence on the rape charge and a concurrent six-year sentence on the kidnapping charge. Defendant appeals, assigning two errors:
 FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING APPELLANT'S RULE 29 MOTION TO DISMISS FOR FAILURE TO ESTABLISH VENUE PURSUANT TO O.R.C. 2901.12(A).
 SECOND ASSIGNMENT OF ERROR
THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 15} Defendant's second assignment of error addresses the facts of the case, and thus we first address it. In it, defendant first contends the evidence is insufficient to support his convictions. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus; State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 16} The jury convicted defendant of kidnapping and rape. As to kidnapping, R.C. 2905.01 provides that "[n]o person by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony or flight thereafter [or] [t]o engage in sexual activity * * * with the victim against the victim's will." R.C.2907.02(A)(2) proscribes rape and provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Vaginal intercourse is a form of sexual conduct. R.C.2907.01(A).
 {¶ 17} Here, the evidence, construed in the state's favor, demonstrates that defendant lied to the victim when he told her they needed to detour from Yvonne's house to retrieve tape for Yvonne's broken window. Defendant's repeated lies deceived the victim into leaving her neighborhood and accompanying defendant, satisfying the deception element of kidnapping. The evidence also reveals that once defendant lured the victim to an isolated location alongside I-71, defendant threatened the victim with a gun and physically forced her to engage in vaginal intercourse. Defendant thus removed the victim for purposes of forced sexual activity, satisfying the remaining elements of kidnapping. Subsequent medical examinations confirmed that the victim suffered vaginal trauma consistent with penile to vaginal penetration; DNA testing showed defendant to be the perpetrator. Accordingly, the evidence is sufficient to prove that defendant not only kidnapped but raped the victim.
 {¶ 18} Defendant next argues the jury verdicts are against the manifest weight of the evidence. When presented with a manifest weight challenge, the appellate court engages in a limited weighing of the evidence to determine whether sufficient, competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt. Conley, supra. To make the determination, the court reviews the entire record as the "thirteenth juror" and decides whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,
supra. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 19} Defendant contends no reasonable fact finder could believe defendant kidnapped and raped the victim. In support of his contention, defendant relies on evidence that the victim knew defendant prior to the party, knew that defendant liked her, voluntarily left the party with defendant, did not expressly object to the journey outside Columbus, did not tell her friends what happened upon her return to the party, and gave the police an incorrect last name for defendant. Given those factors, defendant contends the sexual encounter between the victim and defendant was consensual. Defendant asserts the kidnapping conviction also should be reversed because, without the rape conviction, the jury could not find either that defendant removed the victim from her neighborhood to facilitate the commission of any felony or that defendant engaged in sexual activity with the victim against her will.
 {¶ 20} The victim provided the only account of what happened with defendant and where it happened. While defendant, through counsel, cross-examined the victim, defendant's cross-examination revealed little more than a few minor inconsistencies in the details of the victim's version of the events and a few previously undisclosed social encounters the victim had with defendant. The substance of the victim's allegations did not waver upon cross-examination.
 {¶ 21} The victim's inconsistencies do not render a verdict against the manifest weight of the evidence but are for the jury to resolve or discount accordingly. DeHass, supra. Although the cross-examination raised an issue regarding the victim's credibility, the jury was properly instructed to weigh and evaluate the victim's credibility. After deliberating, the jury resolved the issue in the state's favor. Because the jury could properly believe the victim, the manifest weight of the evidence supports the jury's verdicts. Accordingly, defendant's second assignment of error is overruled.
 {¶ 22} Defendant's first assignment of error contends the trial court erred in denying his motion to dismiss for failure to establish venue. When reviewing a trial court's decision to deny a motion to dismiss, an appellate court applies the same test as if reviewing the challenge based on the sufficiency of evidence.State v. Smith (1997), 80 Ohio St.3d 89, 113.
 {¶ 23} Defendant first contends that Franklin County was not the proper venue for his trial because none of the kidnapping elements occurred in Franklin County. More particularly, defendant claims no evidence supports the state's theory that defendant deceptively removed the victim from her neighborhood in Franklin County under the guise of locating tape for Yvonne's broken window. Defendant maintains that the victim willingly left with defendant, and if the victim thought she were in danger, she had ample opportunity to exit the car and ask for help at the gas station before the two headed south on I-71. Defendant further asserts the state presented no evidence of force, threat, or deception until defendant and the victim were 30 miles south of Franklin County.
 {¶ 24} Venue is proper in a territory where the criminal offense or any element of the offense was committed. R.C.2901.12(A). Although venue is not a material element of an offense, it is a fact that must exist in criminal prosecutions unless the defendant waives it. State v. Headley (1983),6 Ohio St.3d 475, 477. The state does not need to prove venue in express terms so long as it is established by all the facts and circumstances beyond a reasonable doubt. Id.
 {¶ 25} Here, according to the state's evidence, defendant offered the victim a ride from Kevin's house to Yvonne's house. Remembering her promise to stay with Yvonne for the entire night, the victim accepted defendant's offer. When the evidence is viewed in a light most favorable to the state, a reasonable trier of fact could conclude that the moment defendant turned his car away from Yvonne's house, defendant procured the victim's cooperation by deception: defendant explained he detoured from Yvonne's house to locate window tape, but defendant's actions leading up to and following the sexual assault demonstrated he never intended to retrieve the tape. Such hindsight evidence allowed the trier of fact to conclude that defendant manipulated the victim's familiarity with Yvonne's broken window in order to remove her from her neighborhood without objection. Because defendant first deceived the victim near Yvonne's house, located well within the borders of Franklin County, and because deception is an element of kidnapping, the venue for defendant's kidnapping trial was proper in the Franklin County Court of Common Pleas pursuant to R.C. 2901.12(A).
 {¶ 26} Defendant next argues that Franklin County was not the proper venue for his trial because the alleged rape did not occur in Franklin County. The state concedes that defendant likely did not rape the victim in Franklin County but argues that venue was proper because the rape and kidnapping were part of a course of conduct involving the same victim.
 {¶ 27} R.C. 2901.12(H) states, in pertinent part, that "[w]hen an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred." Evidence establishing that the offenses involved the "same victim" is "prima-facie evidence of a course of criminal conduct." R.C. 2901.12(H)(1).
 {¶ 28} Here, defendant kidnapped and raped the same victim. Nothing in the evidence rebuts the prima facie proof of a course of criminal conduct that such evidence presents. Indeed, all of the evidence suggests defendant's kidnapping the victim was intertwined with, and designed to give defendant access to the victim for, sexual purposes. Because the kidnapping and rape charges involved a course of conduct, and because we have determined that an element of kidnapping occurred in Franklin County, the venue for defendant's rape trial was proper in the Franklin County Court of Common Pleas pursuant to R.C.2901.12(H). Accordingly, defendant's first assignment of error is overruled.
 {¶ 29} Having overruled defendant's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Klatt, P.J., and Sadler, J., concur.